UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Marylynn Genaw, as Personal Representative
of the Estate of Harold Genaw,

     Plaintiff,

v.                               Civil Case No. 18-11931

Garage Equipment Supply, Inc.,          Sean F. Cox
                                     United States District Court Judge

     Defendant.

_____/

**OPINION AND ORDER
DENYING IN PART, GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is a product liability case. The matter currently before the Court is Defendant's motion for summary judgment (ECF No. 67). The motion has been fully briefed, and hearing was held on May 12, 2022.

For the reasons set forth below, the Court **DENIES** Defendant's motion for summary judgment as to Count I (negligent manufacturing), Count II (breach of implied warranty), and Count V (failure to warn); and **GRANTS** its motion for summary judgment as to Count III (gross negligence/actual knowledge).

**PROCEDURAL HISTORY**

On June 19, 2018, Plaintiff Marylynn Genaw ("Genaw") initiated this action alleging that a vehicle lift manufactured by Defendant Garage Equipment Supply, Inc. ("Garage Equipment") was defective, and that the defect caused her husband, Harold Genaw ("Harold")'s death. (ECF

1

No. 1). On August 27, 2018, Genaw filed her Amended Complaint. (ECF No. 11). As such the pleading superseded and replaced the original complaint.

In the Amended Complaint, Genaw alleges the following claims against Garage Equipment: (1) negligent production (Count I); (2) breach of implied warranty (Count II); (3) gross negligence/actual knowledge (Count III); (4) breach of express warranty (Count IV); and (5) failure to warn (Count V). (ECF No. 11).

On April 24, 2019, Garage Equipment filed a motion for judgment on the pleadings. (ECF No. 20). On August 7, 2019, this Court issued an Opinion and Order granting Garage Equipment's motion for judgement on the pleadings and dismissed the case. (ECF No. 33, at PageID 184). On August 9, 2019, Genaw filed a motion to reopen the case (ECF No. 35), which the Court denied on November 27, 2019 (ECF No. 40).

On December 17, 2019, Genaw filed a notice of appeal with the Sixth Circuit. (ECF No 41). On April 13, 2021, the Sixth Circuit reversed the Court's order dismissing Genaw's complaint and remanded the case back to this Court. (ECF No. 43).

## FACTUAL BACKGROUND

The parties do not appear to dispute the following facts regarding the incident that gave rise to Genaw's claims because Garage Equipment cites to the Amended Complaint when describing the incident. (ECF No. 67, at PageID 883). The Amended Complaint states:

> On October 2, 2016, Harold Genaw and his son, Justin Genaw was driving a vehicle onto the lift at their home in Algonac, Michigan. Justin Genaw was driving the vehicle and Harold Genaw was standing next to the subject lift directing his son. As the vehicle was being driven onto the subject lift, the subject lift violently and without warning slid across the garage floor and struck Harold Genaw in the back and head causing him to fall to the cement floor, again striking his head.

(ECF No. 11, at PageID 45).

2

With respect to summary judgment motions, this Court's practice guidelines, included in the Scheduling Order and provide, consistent with FED. R. CIV. P. 56 (c) that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(ECF No. 48, at PageID 480).

The parties complied with the Court's practice guidelines for summary judgment motions such that Garage Equipment filed a "Statement of Material Facts Not In Dispute" ("Def's Stmt") (ECF No. 67, at PageIDs 893-900) and Genaw filed a "Counter-Statement of Disputed Facts" ("Pl's Stmt") (ECF No. 75).

The subject lift was sold to Hydraulic Management Inc., and shipped to Aresco in Pontiac, Michigan 48340 by Garage Equipment on September 23, 2010. The lift was backordered and shipped at a later date. (Def's Stmt, at PageID 896). The lift was eventually purchased by Genaw and Harold's son, Justin Genaw ("Justin"), from Brandy and Thomas Nagle through Gene David on June 2, 2016. (Def's Stmt, at PageID 896). Justin purchased a second lift at the time that has remained in storage. (Def's Stmt, at PageID 896).

3

The lifts were assembled at the time Justin purchased them, and they had to be disassembled and reassembled by Justin and others in order to obtain them. (Pl's Stmt, at PageID 896). Justin and some friends assembled one lift at his parent's residence. (Pl's Stmt, at PageID 896). Justin did not receive any training on how to use the lift. (Pl's Stmt, at PageID 897). The secondary seller did not provide any manual(s) for the lift(s). (Pl's Stmt, at PageID 897). Justin and Genaw found a manual online and printed the manual. (Pl's Stmt, at PageID 897). Prior to the incident, Justin used the lift without issue. (Pl's Stmt, at PageID 1601).

## STANDARD OF REVIEW

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment carries the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

Further, "[i]t is an error for the district court to resolve credibility issues against the nonmovant . . . ." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). "In effect, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as

true . . . ." *Id*. (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

## ANALYSIS

Because this Court sits in diversity, the substantive law of Michigan governs the claims of in this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

In Michigan, a product liability action is defined as "an action based on a legal or equitable theory of liability brought for . . . injury to a person . . . caused by or resulting from the production of a product." M.C.L. § 600.2945(h). "Traditional principles of products liability law recognize three types of defects: manufacturing defects, defects due to faulty design, and defects due to inadequate instructions or warnings." *Fleck v. Titan Tire Corp.,* 177 F.Supp.2d 605, 613 (E.D. Mich. 2001) (citing Rest.3d of Torts § 2 (1998)).

"The negligence cause of action recognizes that manufacturers have a duty to use reasonable care to produce a product that is reasonably safe for its intended, anticipated, or reasonably foreseeable use." *Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F.Supp.2d 752, 767 (E.D. Mich. 2010) (citing *Prentis*, 365 N.W.2d at 187).

Here, Garage Equipment makes several arguments as to why the Court should grant it summary judgment.

First, Garage Equipment argues that the Court exclude the engineering design opinions and testimony of Genaw's expert witnesses, J. Terrance Grisim ("Grisim") under Federal Rule of Evidence 702. Garage Equipment argues that Genaw cannot establish her negligent production claim (Count I), her breach of implied warranty claim (Count II), and her breach of express warranty claim (Count IV) without Grisim's testimony.

Second, Garage Equipment argues that Genaw's gross negligence claim (Count III) and her failure to warn claim (Count V) because Genaw there is no genuine issue of material fact as to those claims.

## I. Grisim's Testimony – Counts I, II, and IV

Rule 702 governs testimony of expert witnesses, and it states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. This Rule, which was amended in 2000, reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579,113 S.Ct. 2786., 125 L.Ed2d 469 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). *See* FED. R. EVID. 702 advisory comm. note, 2000 amend. ("In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science.").

The Sixth Circuit has explained that a proposed expert's opinion is admissible under Rule 702, if the opinion satisfies three requirements:

First, the witness must be qualified by 'knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it 'will assist the

trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable.

*In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 528-529 (6th Cir. 2008) (quoting FED. R. EVID. 702). "The party offering the expert's testimony has the burden to prove by a preponderance of the evidence that the expert is qualified." *U.S. ex rel. Tenn. Valley Auth. v. 172 Acres of Land in Tennessee*, 821 F.3d 742, 749 (6th Cir. 2016). "Rejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal*, 527 F.3d at 530. Accordingly, "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *U.S. ex rel. Tenn. Valley Auth.*, 821 F.3d at 749 (quoting *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir. 1998)).

Here, Garage Equipment specifically argues that Grisim is "not qualified to provide engineering design opinions" and therefore Genaw's negligent production claim (Count I), her breach of implied warranty claim (Count II), and her breach of express warranty claim (Count IV) should be dismissed. (ECF No. 67, at PageID 904).

**A. Count I – Negligent Production Claim**

In Count I, Genaw alleges that:

Defendants negligently designed, tested, approved, manufactured, and "produced" the subject vehicle lift in that it failed to exercise reasonable care to prevent the subject vehicle lift from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner in one or more of the following ways:

a. By "producing", assembling, specifying, designing and/or manufacturing a vehicle lift that contained manufacturing, installation, assembly, design and/or "production" defects that caused the vehicle lift to cause injury.

b. By negligently failing to adequately test and failing to use adequate quality control procedures to alert it to manufacturing and or "production defects in the vehicle lift.

7

> c. Other acts of negligence that may become known through the course of discovery.

(ECF No. 11, at PageID 46). Thus, Count I encompasses more than just an allegation of negligent design; it also includes allegations of negligent manufacturing.

In a products liability action, a product can be "defective" based on the product's design or based on the manufacturing process. *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 365 N.W.2d 176, 182 (1984).

In Genaw's response brief, she states that she "is no longer purs[u]ing a claim for negligent design as a part of its claim for negligent production." (ECF No. 69, at PageID 1302). At the hearing, Genaw confirmed she is withdrawing her claim of negligent design. However, Genaw's claim for negligent manufacturing remains.

"To establish a manufacturing defect, the plaintiff must show that: (1) the product was defectively manufactured; (2) the product reached the plaintiff in the same condition as it was when it left the manufacturer; and (3) the defect was the proximate cause of the plaintiff's damages." *Meemic*, 717 F.Supp.2d at 768 (citing *Allstate Ins. Co. v. Icon Health & Fitness, Inc.*, 361 F.Supp.2d 673, 677 (E.D. Mich. 2005)).

Garage Equipment's arguments are specific that Grisim is not qualified to testify as an expert as to Genaw's design defect claim:

> Mr. Grisim's opinion (which directly mirror the expertise and lack of methodologies and support of the *Berry* expert), should be excluded from evidence where he does not possess the knowledge, skill, experience, training, or education to render an opinion **on defective design of an automotive lift.**

(ECF No. 67, at PageID 903-924) (emphasis added). Garage Equipment does not address Grisim's qualifications to testify as an expert on Genaw's defective manufacturing claim in its motion.

8

In Garage Equipment's reply, it argues that "all disputed 'material question of fact', even when taken in a light most favorable to Plaintiff, do not override the issues in the motion – to be determined as a matter of law." (ECF No. 79, at PageID 1625). However, Garage Equipment fails to meaningfully address the elements of a manufacturing defect claim.

As to the first element – that the product was defectively manufactured, the parties have not provided the Court with any additional evidence regarding the incident that occurred on October 2, 2016. The parties appear to agree to the factual description Genaw provided in the Amended Complaint because Garage Equipment cites to the Amended Complaint when describing the incident in its motion. (ECF No. 67, at PageID 883). The Sixth Circuit has already examined the pleadings in the Amended Complaint and held that "the lift demonstrably malfunctioned by unexpectedly sliding across the floor when used in its intended fashion . . . These allegations of the lift's malfunctioning are sufficient to show that the product was defective under Michigan law." *Genaw v. Garage Equipment Supply Co.*, 856 Fed. App'x 23, 26 (6th Cir. 2021).

As to the second element – that the product reached the plaintiff in the same condition as it was when it left the manufacturer, Garage Equipment has not made an argument nor provided the Court with any authority to show that the condition of the lift was somehow altered during its journey from Garage Equipment to Justin Genaw.

As to the third element – that the defect was the proximate cause of plaintiff's injury, Garage Equipment does not appear to dispute that Harold Genaw's death was caused by the lift sliding across the floor and striking him.

Therefore, the Court DENIES Garage Equipment's motion as to Count I because Genaw has withdrawn her negligent design claim, and Garage Equipment did not meet its burden under Rule 56(c) regarding Genaw's negligent manufacturing claim that remains in Count I.

## B. Count II – Breach of Implied Warranty Claim

Here, Garage Equipment argues that "Plaintiff's inability to prove a design defect claim eviscerates her claim of breach of implied warranties." (ECF No. 67, at PageID 920). However, as addressed above, Genaw has withdrawn her design defect claim, but her defective manufacturing claim remains.

While the claims may be similar, negligence and implied warranty are recognized as two separate and distinct theories of recovery for product defects in Michigan. *Teal v. Argon Medical Devices, Inc.*, 533 F.Supp.3d 535, 543 (E.D. Mich. Apr. 12, 2021) (citing *Auto Club Grp. Ins. Co. v. All-Glass Aquarium Co., Inc.*, 716 F.Supp.2d 686, 689 (E.D. Mich. 2010). "A breach of implied warranty claim tests the 'fitness of the product,' while a negligence claim tests a defendant's conduct to determine 'whether it was reasonable under the circumstances.' " *Id*.

Whereas a breach of implied warranty claim "focuses on the condition of the product, and customarily, a defect can be found regardless of the amount of care utilized by the manufacturer." *Meemic*, 717 F.Supp.2d at 768. "To establish an implied warranty claim, the plaintiff must show: (1) a defect attributable to the manufacturer; (2) when the product left the manufacturer; and (3) that the defect caused the plaintiff's injury." *Id*. The distinction between the two is that:

> [In a negligence action] the plaintiff must prove that the defect was caused by the manufacturer's negligence, whereas under implied warranty theory the plaintiff need only establish that the defect was attributable to the manufacturer, regardless of the amount of care utilized by the manufacturer.

*Id*. (citing 20 Mich. Civ. Jur. Products Liability § 4 (2010)).

Therefore, the Court DENIES Garage Equipment's motion as to Count II because a breach of implied warranty claim is "a separate and distinct theory of recovery" when a plaintiff is alleging a manufacturing defect. *See Teal*, 533 F.Supp.3d at 543.

## C. Count IV – Breach of Express Warranty

Genaw stated in her brief and confirmed at the hearing that she "has withdrawn her claim for Breach of Express Warranty." (ECF No. 75, at PageID 1600). Therefore, the Court need not address Count IV.

## II. Count III – Gross Negligence/Actual Knowledge

The Court will first address whether there is a cognizable claim for gross negligence in this case under Michigan law. Then the Court will address whether there is a genuine issue of material fact as to the gross negligence claim.

## A. Gross Negligence/Actual Knowledge claim as a matter of law

In *Jennings v. Southwood,* 446 Mich. 125, 521 N.W.2d 230, 232–34 (1994),"the Michigan Supreme Court repudiated the common-law concept of gross negligence, reasoning that when it abandoned the contributory-negligence doctrine in [*Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979)] the concept of gross negligence was no longer needed." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 377 (6th Cir. 2009). Prior to *Jennings*, Michigan courts recognized gross negligence as an exception to the contributory-negligence doctrine. *Id*. at 376. Under this common-law doctrine, gross negligence was not a higher degree of negligence, instead "it was 'merely an alternative label used to describe the doctrine of last clear chance' and allowed a plaintiff to recover when the defendant's negligence (even ordinary negligence) occurred after the plaintiff's negligent conduct." *Id*. (quoting *Jennings*, 521 N.W.2d at 233).

11

The *Jennings* court repudiated this common-law concept of gross negligence. *Jennings*, 521 N.W.2d at 233. However, "the *Jennings* court recognized that a different concept of 'gross negligence' survived in certain Michigan statutes[.]" *Biegas,* 573 F.3d at 376.  In these contexts, "gross negligence" means "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." *Jennings*, 521 N.W.2d at 235 (quoting Government Tort Liability Act, MICH. COMP. LAWS § 691.1407(7)(a)).

The contexts in which gross negligence survives in Michigan include situations where "certain actors are immune from liability for ordinary negligence but may be liable for conduct reaching a grossly negligent level." *Id.* (citing *Jennings*, 446 Mich. at 135). Examples of such contexts are the Emergency Medical Services Act (EMSA), which provides this immunity to emergency medical services personnel, and the Government Tort Liability Act (GTLA), which confers varying degrees of immunity to governments, their agencies, and their agents. *Jennings*, 521 N.W.2d at 235. Gross negligence also survives in cases involving contractual waivers of liability, which "serv[e] to insulate against ordinary negligence, but not gross negligence." *Xu v. Gay*, 257 Mich. App. 263, 269 (2003).

Based upon this body of caselaw, the Court asked the parties for supplemental briefing as to whether gross negligence was a cognizable claim in this case pursuant to FED. R. CIV. P. 56(f). (ECF No. 76). The parties complied and filed supplemental briefs on this issue. (ECF Nos. 77, 80).

After reviewing the parties' supplemental briefs, the Court agrees with Genaw that "the claim here remains viable as Michigan products liability statutes speak directly to gross negligence." (ECF No. 77, at PageID 1620).

12

Michigan's statute regarding the noneconomic cap on damages in products liability actions

states:

> (1) In an action for product liability, the total amount of damages for noneconomic loss shall not exceed $280,000.00, unless the defect in the product caused either the person's death or permanent loss of a vital bodily function, in which case the total amount of damages for noneconomic loss shall not exceed $500,000.00. On the effective date of the amendatory act that added this section, the state treasurer shall adjust the limitations set forth in this subsection so that the limitations are equal to the limitations provided in section 1483. After that date, the state treasurer shall adjust the limitations set forth in this subsection at the end of each calendar year so that they continue to be equal to the limitations provided in section 1483.

> (2) In awarding damages in a product liability action, the trier of fact shall itemize damages into economic and noneconomic losses. Neither the court nor counsel for a party shall inform the jury of the limitations under subsection (1). The court shall adjust an award of noneconomic loss to conform to the limitations under subsection (1).

> (3) *The limitation on damages under subsection (1)* for death or permanent loss of a vital bodily function *does not apply to a defendant if the trier of fact determines by a preponderance of the evidence that the death or loss was the result of the defendant's gross negligence*, or if the court finds that the matters stated in section 2949a are true.

MICH. COMP. LAWS § 600.2946a (emphasis added). Therefore, in a products liability action, a

plaintiff can avoid the damages cap if the trier of fact determines by a preponderance of the

evidence that the death or loss was the result of defendant's gross negligence. *Id*.

Based on this statutory language, the Court finds that MICH. COMP. LAWS § 600.2946a is

another Michigan statute in which gross negligence survives under *Jennings*. When the Michigan

Supreme Court analyzed gross negligence in the context of EMSA, it looked to the intent of the

legislature. *Jennings*, 521 N.W.2d at 235. Here, the products liability statute provides a greater

remedy for plaintiffs who can demonstrate that the death or loss was the result of gross negligence.

MICH. COMP. LAWS § 600.2946a. In this context, "gross negligence" is not the common-law gross

negligence that was rejected by *Jennings*. Furthermore, similar to the GTLA, "gross negligence" is defined in the products liability statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." MICH. COMP. LAWS § 600.2945(d).

Furthermore, courts have recognized claims of gross negligence in products liability actions under Michigan law even after *Jennings*. In *Wendorf v. JLG Industries, Inc.*, 683 F.Supp.2d 537 (E.D. Mich. 2010), the Eastern District of Michigan expressly allowed the plaintiff to file an amended claim that his noneconomic damages were not capped by operation of M.C.L. § 600.2946a(3) "because his injuries resulted from [defendant's] gross negligence." *Id*. at 549. In *Estate of Patel v. Reinalt-Thomas Corp.*, No. 337851, 2018 WL 5305098 (Mich. Ct. App. Oct. 25, 2018), the Michigan Court of Appeals expressly held that "under MCL 600.2946a(3), a plaintiff avoids the damages cap of MCL 600.2946a(1) if the defendant was grossly negligent . . ." *Id*. at *10.

Therefore, the Court concludes that there is a cognizable claim of gross negligence in this case as a matter of law.

**B. Gross Negligence/Actual Knowledge claim as a matter of fact**

Now the Court shall address whether the claim of gross negligence/actual knowledge survives as a matter of fact under FED. R. CIV. P. 56(c).

Under MICH. COMP. LAWS § 600.2946a(3), a plaintiff avoids the damages cap of MICH. COMP. LAWS § 600.2946a(1) if the defendant was grossly negligent or if the trial court finds that "the matters stated in section 2949a are true." *See Rodriguez v. ASE Ind., Inc.*, 275 Mich. App. 8, 738 N.W.2d 238, 241 (2007) ("In other words, the statute clearly and unambiguously establishes two independent bases to avoid application of the damages limitation: if the trier of fact determines

that the defendant was grossly negligent or if the trial court determines that the actual knowledge provisions of § 2949a apply."). Therefore, Count III survives this motion for summary judgment if there is a question of material fact as to whether Garage Equipment acted "so reckless as to demonstrate a substantial lack of concern for whether injury results" or if "at the time of manufacture or distribution [Garage Equipment] had actual knowledge that the product was defective and that there was a substantial likelihood that the defect would cause injury that is the basis for the action, and [Garage Equipment willfully disregarded that knowledge in the manufacture or distribution of that product[.]" MICH. COMP. LAWS §§ 600.2946a(3); 600.2949a.

In short, the Court must address (1) whether Garage Equipment was grossly negligent and (2) whether Garage Equipment had actual knowledge as stated in § 2949a.

Here, Garage Equipment argues that there is no evidence that it was grossly negligent or that it knew of a defect. (ECF No. 80, at PageID 1669).

In Genaw's brief, she argues that:

Based on Mr. Grisim's opinion, and the other damning facts in this case, Plaintiff will be pursuing damages in excess of the product liability damages cap for negligence, based on the inherently dangerous nature of the product that rendered Defendant's behavior grossly negligent in failing to address the warnings and otherwise ensuring the safety of the product. There is no question that Defendant's conduct in producing the subject lift was "so reckless as to demonstrate a substantial lack of concern for whether injury results."

(ECF No. 69, at PageID 1293).

As an initial matter, Genaw has not directed the Court to any authority to demonstrate that Garage Equipment had actual knowledge of the defect.

15

At the hearing, the Court asked Genaw to identify what evidence demonstrated that Garage Equipment was grossly negligent. Genaw responded that she relied on the opinion of her safety expert (Grisim), who opined that the lack of anchoring made the lift unreasonably dangerous.

Grisim's opinion is limited to the design of the lift and the lack of warnings for the lift. (ECF No. 96-2). Grisim specifically testified that the "*design* of this lift without the requirement for anchorage was inherently dangerous especially when used in conjunction with front wheel drive vehicles." (ECF No. 96-2, at PageID 1312) (emphasis added). As established above, Genaw has withdrawn her design defect claim, so Grisim's opinions as to the design of the lift are irrelevant.

Grisim did not opine on the manufacturing of the lift. (ECF No. 96-2). Therefore, the Court looks to the failure to warn portion of Grisim's opinion to determine if there is a genuine issue of material fact as to whether Garage Equipment was grossly negligent.

As established below in the Failure to Warn section, when viewed in light most favorable to Genaw, there is a genuine issue of material fact as to whether Garage Equipment was negligent by failing to warn. However, "evidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v. Rozwood*, 461 Mich. 109, 597 N.W.2d 488, 493 (1994). Gross negligence is "almost a willful disregard of precautions or measures to attend safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea v. Crabtree*, 263 Mich. App. 80, 687 N.W.2d 333, 339 (2004).

"Although questions regarding whether a defendant's conduct constituted gross negligence are generally questions of fact for the jury, if reasonable minds could not differ, summary

16

disposition may be granted." *Wood v. City of Detroit*, 323 Mich. App. 369, 374, 742 N.W,2d 136

(2007); *see also Smith v. Twp. of Prairieville*, 194 F.Supp.3d. 658, 674-75 (W.D. Mich. 2016)

(interpreting Michigan law and holding "[w]hether gross negligence occurred is 'generally an issue

of fact'; summary judgment should be granted only 'where reasonable minds could not differ.' ").

Here, Genaw has not provided the Court with evidence to demonstrate that Garage

Equipment's failure to warn rises to the level of gross negligence. The portion of Grisim's opinion

relevant to failure to warn is as follows:

> Garage Equipment Supply, Inc. failed not only in the design of this lift but provided
> no warnings, instructions or training materials that would have informed potential
> users of the product of the hazards inherent in using it in conjunction with a front
> wheel drive vehicle.
>
> In fact, [i]n the Revision A version of the manual dated 12/30/06 an optional castor
> system is shown to "roll the lift around with or without a car on it."
>
> In the Revision F of the manual dated 1/14/ Step 9 on page 16 says "(Anchoring:
> Optional)."

(ECF No. 96-2, at PageID 1312). There is nothing in Grisim's opinion from which a juror could

determine that by failing to provide warnings on the lift, Garage Equipment acted "willfully" or

that it "simply did not care about the safety or welfare of those in [its] charge." *See Tarlea*, 687

N.W.2d at 339 (2004). Grisim merely states that Garage Equipment did not provide warnings to

users of the lift. This is insufficient to establish gross negligence.

Therefore, the Court GRANTS Garage Equipment's motion as to Genaw's gross

negligence/actual knowledge claim, and DISMISSES Count III.

### III. Count V – Failure to Warn

In order to establish a negligent failure to warn claim in a products liability case under

Michigan law, a plaintiff must prove that the product was rendered defective by the manufacturer's

"failure to warn about dangers regarding the intended uses of the product, as well as foreseeable misuses" of the product. *Gregory v. Cincinnati Inc.*, 450 Mich. 1, 11, 538 N.W.2d 325 (1995). "The Michigan Legislature has codified a product manufacturer's duty to warn end-users about dangers associated with a product's use." *Mitchell v. City of Warren*, 803 F.3d 223, 226 (6th Cir. 2015). The statute provides:

> a product liability action brought against a manufacturer or seller for harm allegedly caused by a failure to provide adequate warnings or instructions, a manufacturer or seller is not liable unless the plaintiff proves that the manufacturer knew or should have known about the risk of harm based on the scientific, technical, or medical information reasonably available at the time the specific unit of the product left the control of the manufacturer.

*Mitchell*, 803 F.3d at 226–27 (quoting MICH. COMP. LAWS § 600.2948(3)). To establish a claim for failure to warn, a plaintiff must show that the defendant: "(1) had actual or constructive knowledge of the alleged danger, (2) had no reason to believe that consumers would know of this danger, and (3) failed to exercise reasonable care to inform consumers of the danger." *Genaw v. Garage Equipment Supply Co.*, 856 Fed.App'x 23, 28 (6th Cir. 2021) (quoting *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 741 (6th Cir. 2000)).

Neither party focuses its analysis on the elements of a failure to warn claim. Instead, Garage Equipment argues that:

> there is no evidence of a danger in not anchoring and/or that [Garage Equipment] knew of any such alleged problem before the lift left Garage Equipment's control. Further there is no evidence that [Garage Equipment] had actual or constructive knowledge of the defect, if this Court finds it exists, which [Garage Equipment] denies.

(ECF No. 67, at PageID 923). In response, Genaw does not provide specific factual authority to match the elements of a failure-to-warn claim. (ECF No. 69, at PageID 1296-1302). Instead,

18

Genaw emphasizes that Michigan law does not require a plaintiff to identify a specific defect to prevail for a failure to warn claim. (ECF No. 69, at PageID 1297).

However, the Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen*, 305 F.3d at 526. Genaw provided the deposition testimony of Mr. Michael O'Connell's ("O'Connell"), who worked as the Director of Operations for Garage Equipment. While Genaw did not connect O'Connell's testimony to the elements of a failure to warn claim, when viewed in the light most favorable to Genaw, the Court can make the connections.

As to the first element – whether Garage Equipment had actual or constructive knowledge of the alleged danger, O'Connell testified that the lift was certified "as a four-post surface mounted lift[.]" (ECF No. 69-4, PageID 1425). Therefore, as Genaw argues "it was not certified to be used without mounting to the surface." (ECF No. 69, at PageID 1299). From this, the Court concludes there is a genuine issue of material fact as to whether Garage Equipment had constructive knowledge of the danger. Garage Equipment knew that the lift was only certified as "a four-post mounted lift" – therefore, a jury could conclude that it should have known that the lift would be dangerous to use if it was not mounted.

As to the second element – whether Garage Equipment had reason to believe consumers would know of the danger, O'Connell testified to the following:

Q. So number 5, I'll read it into the record. "Only trained operators should operate this lift. All non-trained personnel should be kept away from work area. Never let non-trained personnel operate the lift" - - or "come in contact with the lift." Are you referring to the part that "all non-trained personnel should be kept away from the work area"?

A. Yes.

19

> Q. So you believe that this is a warning that nobody should be around the lift while somebody is driving a car onto the lift?
>
> A. Correct. And there should be decals on the lift itself documenting or stating that you shouldn't be near or around the lift.

(ECF No. 69-4, at PageID 1401). O'Connell's testimony is sufficient to create a genuine issue of material fact as to whether Garage Equipment had no reason to believe that consumers would know of the danger. O'Connell testified that there should be a decal on the lift warning users not to be around the lift, which indicates he (and by extension Garage Equipment) believes that consumers would not know to stand away from the lift while it was in use.

As to the third element – whether Garage Equipment failed to exercise reasonable care to inform consumers of the danger, O'Connell testified that the instructions for the lift do not contain a warning directing consumers to stay clear of the lift while loading a vehicle:

> Q. No problem. We're almost done here. Between these two pages, 4 and 5, I see numbers 1 through 31, which are a bunch of warnings. Are there any warnings in there that say that someone, a person cannot be around a lift while a car is being driven onto the lift or loaded onto - -
>
> A. No.

(ECF No. 38-2, at PageID 382-383). When viewed in the light most favorable to Genaw, this is sufficient to create a genuine issue of material fact as to whether Garage Equipment failed to exercise reasonable care to inform consumers of the danger.

Therefore, the Court DENIES Garage Equipment's motion for summary judgment as to Count V.

## CONCLUSION

For the reasons explained above, the Court **ORDERS** that Garage Equipment's motion for summary judgment is **DENIED** as to Count I (negligent manufacturing), Count II (breach of

implied warranty), and Count V (failure to warn); **GRANTED** as to Count III (gross negligence/actual knowledge). As such, Count III is **DISMISSED**.

Genaw has withdrawn her breach of express warranty claim (Count IV). Therefore, the only claims remaining in this case are Count I (negligent manufacturing), Count IV (breach of implied warranty), and Count V (failure to warn).

**IT IS SO ORDERED.**

Dated:  May 27, 2022                                    s/Sean F. Cox
                                                        Sean F. Cox
                                                        U. S. District Judge

21